1   BOIES, SCHILLER & FLEXNER LLP
    JOHN F. COVE, JR. (CA Bar No. 212213)
2   DAVID W. SHAPIRO (CA Bar No. 219265)
    KEVIN J. BARRY (CA Bar No. 229748)
3   1999 Harrison St., Suite 900
    Oakland, CA 94612
4   Telephone: (510) 874-1000
    Facsimile: (510) 874-1460
5   Email: jcove@bsfllp.com
           dshapiro@bsfllp.com
6          kbarry@bsfllp.com

7   *Proposed Interim Class Counsel and Interim Liaison Counsel*
    *For Direct Purchaser Plaintiffs*
8
    *(Additional Counsel Appear on Signature Page)*
9

10              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
11

12  IN RE GRAPHICS PROCESSING UNITS      )   Case No.: M:07-CV-01826-WHA
    ANTITRUST LITIGATION                 )
                                         )   MDL No.  1826
13                                       )
                                         )
14  This Document Relates to:            )   **NOTICE OF MOTION AND**
    ALL ACTIONS                          )   **MEMORANDUM OF POINTS AND**
15                                       )   **AUTHORITIES IN SUPPORT OF**
                                         )   **MOTION TO APPOINT BOIES,**
16                                       )   **SCHILLER & FLEXNER LLP AS**
                                         )   **INTERIM CLASS COUNSEL AND**
17                                       )   **INTERIM LIAISON COUNSEL FOR**
                                         )   **DIRECT PURCHASER PLAINTIFFS**
18                                       )   **AND IN OPPOSITION TO THE MOTION**
                                         )   **FILED BY THE KFK GROUP**
19                                       )
20                                       )   Hon. William H. Alsup
                                         )   Courtroom 9, 19th Floor
21                                       )   Date:  May 24, 2007
22  _____)   Time:    11:30 a.m.

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2

Table of Authorities .................................................................................................... ii

3

4

Notice of Motion ........................................................................................................ 1

5

Memorandum of Points and Authorities ................................................................... 1

6

7      I.      Preliminary Statement ................................................................... 2

8      II.     Procedural and Factual Background ............................................. 3

9      III.    Argument ....................................................................................... 4

10             A.      BSF Has Substantial Experience in the Management and Prosecution
                       of Complex Antitrust Class Action Litigation ............................................. 6

11

12                     1.      BSF Has Substantial Experience as Trial Counsel in
                               Antitrust Class Actions .................................................................... 6

13                     2.      BSF Has Negotiated Landmark Antitrust Class Action
                               Settlements ....................................................................................... 7

14

15                     3.      BSF Has Uncovered Antitrust Conspiracies In Advance of
                               Government Action........................................................................... 8

16                     4.      Additional Antitrust Litigation Experience...................................... 9

17                     5.      BSF Has Been Retained by Major Companies to Prosecute
                               Important Antitrust Litigation........................................................... 9

18

19                     6.      BSF Partners Who Will Work on This Litigation Have
                               Substantial Antitrust and Trial Experience ................................... 10

20             B.      BSF Has Superior Resources and Geographic Coverage To
                       Vigorously Prosecute This Complex Antitrust Class Action

21                     Litigation................................................................................................... 14

22             C.      BSF Has Taken Significant Steps to Advance this Litigation .................. 16

23

24     IV.     Conclusion.................................................................................... 16

25

26

27

28

i

NOTICE OF MOTION AND MPA TO APPOINT BSF AS INTERIM CLASS COUNSEL AND INTERIM LIAISON COUNSEL FOR DIRECT
PURCHASER PLAINTIFFS AND IN OPPOSITION TO THE MOTION FILED BY THE KFK GROUP – M:07-CV-WHA

1

## **TABLE OF AUTHORITIES**

2

3

### **FEDERAL CASES**

4    Cullen v. New York State Civil Serv. Comm'n, 566 F.2d 846 (2d Cir. 1977) ................................5

5    Hill v. The Tribune Co., 2005 WL 3299144 (N.D.Ill. Oct. 13, 2005) ............................................4

6    In re "Agent Orange" Product Liability Litig., 818 F.2d 179 (2d Cir. 1987) ................................5

7    In re Air Cargo Shipping Serv. Antitrust Litig., 240 F.R.D. 56 (E.D.N.Y. 2006) .........................4

8    In re Auction Houses Antitrust Litig., 2001 WL 170192 (S.D.N.Y. Feb. 22, 2001) .....................7

9    In re Bendectin Litig., 857 F.2d 290 (6th Cir. 1988) ....................................................................4

10   In re First Databank Antitrust Litig., 205 F.R.D. 408 (D.D.C. 2002) ..........................................11

11   In re Scrap Metal Antitrust Litig., 2006 WL 2850453 (N.D. Ohio, Sept. 30, 2006) .....................7

12   In re Vitamins Antitrust Litig., 2000 WL 1737867 (D.D.C. Mar. 31, 2000) .................................8

13   In re Vitamins Antitrust Litig., 398 F. Supp. 2d 209 (D.D.C. 2005) ...........................................8

14   In re Wirebound Boxes Antitrust Litig., 128 F.R.D. 256 (D. Minn. 1989) ...................................6

15   MacAlister v. Guterma, 263 F.2d 65 (2d. Cir. 1958) ................................................................ 4-5

16   Parkinson v. Hyundai Motor America, 2006 WL 2289801 (C.D. Cal. Aug. 7,
     2006) ..........................................................................................................................................4

17

     Vincent v. Hughes Air West, Inc., 557 F.2d 759 (9th Cir. 1977) ................................................4

18

19

### **RULES**

20

21   Federal Rules of Civil Procedure Rule 23(g)(2)(A) ....................................................................4

22   Federal Rules of Civil Procedure Rule 23(g)(1)(C) ....................................................................4

23   Federal Rules of Civil Procedure Rule 23(g)(2)(B) ....................................................................5

24

25

26

27

28

ii

NOTICE OF MOTION AND MPA TO APPOINT BSF AS INTERIM CLASS COUNSEL AND INTERIM LIAISON COUNSEL FOR DIRECT
PURCHASER PLAINTIFFS AND IN OPPOSITION TO THE MOTION FILED BY THE KFK GROUP – M:07-CV-WHA

1

**<u>TREATISE</u>**

2  Manual for Complex Litigation (Fourth) (2006) § 10.221 ...........................................5-6

3  Manual for Complex Litigation (Fourth) (2006) § 10.224 ............................................. 6

4  Manual for Complex Litigation (Fourth) (2006) § 20.224 ............................................. 5

5  Manual for Complex Litigation (Fourth) (2006) § 21.11 ............................................... 4

6  Manual for Complex Litigation (Fourth) (2006) Author's Comments........................................ 3

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MPA TO APPOINT BSF AS INTERIM CLASS COUNSEL AND INTERIM LIAISON COUNSEL FOR DIRECT
PURCHASER PLAINTIFFS AND IN OPPOSITION TO THE MOTION FILED BY THE KFK GROUP – M:07-CV-WHA

1

## NOTICE OF MOTION

2

3        TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

4        PLEASE TAKE NOTICE that at 11:30 a.m. on May 24, 2007, or as soon thereafter as the

5    matter may be heard before the Honorable William H. Alsup of the United States District Court

6    of the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, the

7    undersigned law firm will, and hereby does, move this Court for an Order appointing Boies,

8    Schiller & Flexner LLP ("BSF") as sole interim class counsel and interim liaison counsel for the

9    putative direct purchaser class in these consolidated actions.

10       This motion is made pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.  The

11   grounds for this motion are that this complex case will benefit from the appointment of interim

12   lead class counsel, and that BSF, and the particular attorneys who will be handling this matter,

13   have extensive experience in litigating highly complex antitrust actions through trial, on behalf

14   of both class plaintiffs and defendants, and have participated in some of the most important

15   antitrust cases litigated in the last twenty-five years.

16       This motion is based on this notice of motion, the following memorandum of points and

17   authorities, the Declaration of Philip J. Iovieno and attached exhibits, and the proposed Order

18   submitted herewith.

19

20

## MEMORANDUM OF POINTS AND AUTHORITIES

21

22       Plaintiff Jordan Walker and Boies, Schiller & Flexner LLP ("BSF") respectfully submit

23   this memorandum in support of their motion to appoint BSF as sole interim class counsel and

24   interim liaison counsel in *In re Graphic Processing Unit Antitrust Litigation* for the direct

25   purchaser class.  This memorandum is also submitted in opposition to the motion filed by Kaplan

26   Fox & Kilsheimer LLC ("KFK"), *et al*. (the "KFK Motion").

27

28

1  **I.    Preliminary Statement**

2    BSF is recognized as one of the premier antitrust law firms in the United States.  BSF has

3  over 230 attorneys in nine offices throughout the country – including an office of fourteen

4  attorneys in the Northern District of California (Oakland).  BSF specializes in the trial of highly

5  complex litigation, and its partners have litigated some of the most significant antitrust cases in

6  recent times, both in terms of the legal issues at stake and the recoveries that were obtained for

7  consumers and businesses.  BSF partners, including those who would handle this matter, are

8  among the limited number of attorneys who have successfully brought defendants to trial in

9  antitrust class actions in recent years and won significant jury verdicts.  In addition, BSF

10  partners, including those who would handle this matter, have won settlements (*e.g.*, *In re Auction*

11  *Houses Litigation* and *In re Vitamins Litigation*) that have been praised by the Courts not simply

12  as fair and reasonable, but as record settlements.  Finally, undersigned BSF partners have been

13  publicly recognized for uncovering major cartel activity through their own initiative.

14    In a recent antitrust class action in which it achieved a record settlement for the plaintiff

15  class, *In re Auction Houses*, BSF demonstrated its ability to work with and at the direction of the

16  District Court (the Honorable Lewis Kaplan of the Southern District of New York) as the sole

17  lead counsel under a schedule similar to that proposed by the Court for this case.  (See attached

18  Declaration of Philip J. Iovieno ("Iovieno Decl."), Exhibit 1 ("Scheduling Order")).  In that case,

19  the pretrial schedule set, and all parties adhered to, a very tight schedule that completed all

20  discovery and motion practice within one year.  BSF is qualified to manage and litigate the

21  present litigation, if awarded the position of interim class and liaison counsel, along a similar

22  schedule.

23    The KFK Motion proposes that three firms (following an agreement amongst those firms)

24  serve as lead and liaison counsel for the direct purchaser class.  Given the limited number of

25  direct purchaser complaints filed in this litigation, and to avoid disputes such as the present one

26  BSF contacted KFK and Spector Roseman & Kodroff, P.C. ("SRK") and offered to act as co-

27  lead counsel with them.  The two firms instead decided to ally with a qualified California firm,

28  Saveri & Saveri ("Saveri"), and to move to be appointed co-lead counsel.

1    BSF has acted and will continue to act cooperatively with other counsel in this case. The

2    Court may wish to consider as an alternative to the co-lead arrangement proposed by the KFK

3    Motion, appointing a sole lead counsel to supervise the case because: there are only three

4    defendants in this case (two of which have merged); they are all based in the United States at this

5    time; and they are all being represented by two law firms.

6        In an antitrust class action pending before the Northern District of California involving

7    SRAM, the Honorable Claudia Wilken held just last week that a multiple lead counsel structure

8    proposed by three firms, including the Saveri firm, was unnecessary based on the facts of that

9    case.   Instead, Judge Wilken appointed a single lead and liaison counsel.   Judge Wilken's

10   approach is echoed in the Manual for Complex Litigation (Fourth) (2006) (the "Manual"),

11   *Author's Comments*:  "if one firm can fulfill the lead counsel role, adding more firms adds

12   nothing to the process, and may only make it more cumbersome or expensive."  *Id*. at 43-44

13   (collecting cases).  This was also the approach of the Court in *In re Scrap Metal Antitrust*

14   *Litigation* (Memo. Op. 2002).  *See* Iovieno Decl., Exhibit 2.

15            **II.      Procedural and Factual Background**

16       Pending before this Court are approximately six related direct purchaser actions.[1]

17   Plaintiffs in these actions allege that the two dominant companies in the sale and manufacture of

18   Graphic Processing Units[2] ("GPU"), Nvidia Corporation ("Nvidia") and ATI Technologies, Inc.

19   ("ATI"), which was acquired in October 2006 by Advanced Micro Devices, Inc. ("AMD")

20   (collectively the "Defendants"), were engaged in a conspiracy to fix, raise, maintain or stabilize

21   the prices of GPU sold in the United States.  In addition to having been named as defendants in

---

[1] The six direct purchaser actions of which BSF is aware of are as follows:  *Walker v. Nvidia Corp., et al.*, 07-CV-2156 (N.D. Cal.); *Holtzman v. Advanced Micro Devices Inc., et al.*, 06-CV-8117 (C.D. Cal.); *Bensignor v. Nvidia Corp., et al.*, 07-CV-0394 (N.D. Cal.); *Williams v. Nvidia Corp., et al.*, 07-CV-1743 (N.D. Cal.); *Connolly v. Advanced Micro Devices, et al.*, 07-CV-2206 (N.D. Cal.) and *Juskiewicz v. Nvidia Corp., et al.*, 07-CV-0381 (N.D. Cal.).  BSF believes that there are approximately forty-five indirect purchaser cases also filed.  Plaintiff Juskiewicz has filed not only the direct action listed above, but also an indirect action (Case No. 06-CV-7553).

[2] GPU are dedicated graphics rendering devices for personal computers, workstations, or game consoles.  GPU are very efficient at manipulating and displaying computer graphics, and their highly parallel structure makes them more effective than typical Central Processing Units ("CPU") for a range of complex algorithms.  Modern GPU have support for 3D computer graphics, and typically include digital video-related functions as well.

3

the civil class actions that have been filed, Nvidia and AMD are also being investigated for alleged price fixing activities by the Antitrust Division of the U.S. Department of Justice ("DOJ").  The DOJ's investigation is being conducted out of its San Francisco office.  Plaintiffs allege that the defendants' anticompetitive acts were done with the purpose and effect of eliminating competition through their collusive conduct in the GPU market in direct violation of the Sherman Act.

### III.  Argument

Rule 23 of the Federal Rules of Civil Procedure provides that a court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(2)(A).  The Advisory Committee Notes to Rule 23(g)(2)(A) explain that the rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class."  The Manual for Complex Litigation (Fourth) elaborates:

> If … there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment.  *In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during pre-certification activities*, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.

Manual § 21.11 (emphasis added).

Courts considering motions for interim class counsel have generally applied the standard set out in Rule 23(g)(1)(C) for the appointment of class counsel once a class has been certified.  *See, e.g.*, *Parkinson v. Hyundai Motor America*, Nos. CV06-345AHS *etc.*, 2006 WL 2289801, at *2 (C.D. Cal. Aug. 7, 2006); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006); *Hill v. The Tribune Co.*, Nos. 05 C 2602 *etc.*, 2005 WL 3299144, at *3-4 (N.D. Ill. Oct. 13, 2005).

In complex cases such as this one, it is well-established that a district court has the authority to appoint lead counsel to coordinate the prosecution of the case.  *See, e.g.*, *In re*

4

*Bendectin Litig.*, 857 F.2d 290, 297 (6th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989); *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 774-75 (9th Cir. 1977). "The benefits achieved by consolidation and appointment of general counsel, *i.e.*, elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation." *MacAlister v. Guterma*, 263 F.2d 65, 69 (2d. Cir. 1958).

Rule 23(g)(2)(B) states, in relevant part, that "[i]f more than one adequate applicant seeks appointment as class counsel, the court must appoint the applicant best able to represent the interests of the class." The selection of lead class counsel rests with the Court and cannot be made solely by agreement of plaintiffs or defendants. Manual § 20.224 ("Deferring to proposals by counsel without independent examination, even those that seem to have the concurrence of a majority of those affected, invites problems down the road if designation counsel turn out to be unwilling or unable to discharge their responsibilities satisfactorily or if they incur excessive costs."). A court's selection of counsel "should be guided by the best interests of [the members of the class], not the entrepreneurial initiative of … counsel." *Cullen v. New York State Civil Service Comm'n*, 566 F.2d 846, 849 (2d Cir. 1977); *In re "Agent Orange" Product Liability Litig.*, 818 F.2d 179, 187 (2d Cir. 1987).

For example, in *In re Scrap Metal Antitrust Litigation,* the Court considered a proposal by BSF to act as co-lead counsel with another firm. The Court instead, for efficiency reasons, decided to appoint BSF as sole lead counsel over an executive committee of other firms in the case. (Iovieno Decl., Exhibit 2). As set forth above, the Northern District of California also has followed this approach with another firm in the SRAM litigation. *See In re SRAM Antitrust Litig.*, J. Wilken's Order dated May 3, 2007 (Iovieno Decl., Exhibit 3).

The Manual for Complex Litigation (Fourth) summarizes the responsibilities of lead counsel as follows:

> Lead counsel [is][c]harged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation. Typically they act for the group – either personally or by coordinating the efforts of others –

5

> in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met.

Manual § 10.221.

Courts consider a number of factors in determining adequate counsel for such a role, including the firm's experience and capability, the firm's resources, and the firm's commitment and qualifications to accomplish the assigned work. *Id*. § 10.224.  BSF excels at all these factors. These factors are more significant than which case was filed first, particularly in a case such as this where cases were filed shortly after the announcement of a government investigation.  *In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 256, 258 (D. Minn. 1989).

**A.  BSF Has Substantial Experience in the Management and Prosecution of Complex Antitrust Class Action Litigation**

BSF is one of the most experienced law firms in the field of class actions and complex antitrust litigation.  A copy of the firm's résumé is attached to the Iovieno Decl., Exhibit 4.  As is reflected in the résumé, BSF has extensive experience in complex antitrust class action litigation. BSF has repeatedly (and recently) demonstrated its ability to prepare and try complex cases to verdict, a significant factor weighing in favor of its appointment as lead counsel in the present litigation.  This experience is particularly important here, where the defendants are large, well-financed corporations who can be expected to contest vigorously the claims in this litigation.

**1.  BSF Has Substantial Experience as Trial Counsel in Antitrust Class Actions**

BSF, and more specifically, its undersigned counsel, have tried numerous complex cases, including antitrust class actions.  Notably, undersigned counsel have acted as trial counsel in the leading examples of the few recorded antitrust class actions prosecuted through a jury trial in the past decade.  These trials show defendants in future cases the firm's willingness to prosecute a case through trial.  The trials also show defendants that it may be disadvantageous to refrain from offering meaningful settlement at an early stage of the litigation.  Thus, while it is true that most large antitrust cases settle before trial, it is also true that the ability to try such a case gives

6

lead counsel additional leverage in settlement negotiations, which benefits the class.

For example, in *In re Vitamins Antitrust Litigation*, after obtaining then-record settlements of over a billion dollars from the initially settling defendants, undersigned counsel William Isaacson and Tanya Chutkan of BSF – acting as trial counsel with their co-lead counsel – won a jury verdict against four non-settling defendants before Chief Judge Hogan in the District of Columbia in 2003 of $49.5 million (10% more than was requested from the jury), which was then trebled to $148.5 million and reduced as a result of other settlements.

In *In re Scrap Metal Antitrust Litig.*, undersigned counsel William Isaacson and Tanya Chutkan – as lead counsel – won a jury verdict in the Northern District of Ohio in 2006  for $11.5 million, after trebling and judgment reduction for other settlements, $23 million.   The district court denied defendants' post-trial motions and, among other things, held that cross examination by undersigned counsel had revealed "conduct tantamount to suborning perjury by a key witness." *In re Scrap Metal Antitrust Litig.*, 2006 WL 2850453, at *3 (N.D. Ohio, Sept. 30, 2006).

Notably, each of these trials involved defendants whom the government had not prosecuted and who maintained that they were not involved in the subject conspiracies.

### 2.  BSF Has Negotiated Landmark Antitrust Class Action Settlements

The following excerpts are from recent court opinions regarding settlements obtained by the work of BSF as lead or co-lead counsel, including by several of the partners involved in this matter.

#### <u>Auction Houses</u>

A $512 million settlement in *In re Auction Houses Antitrust Litigation*:

> Indeed, there could be no greater testament to the process than some of the comments made at the settlement hearing by two of the interim lead counsel who were ousted as a result of the Court's decision to hold an auction to select lead counsel.  Mr. Furth, on behalf of all of the interim lead counsel, said that he "never in [his] fondest dreams … believed that these defendants would pay $512 million" and that *this settlement "is the most outstanding result I have ever heard of in the history of the antitrust laws*."

7

1  *In re Auction Houses Antitrust Litig.*, 2001 WL 170792, at *6 (S.D.N.Y. Feb. 22, 2001)

2  (emphasis added).

3       In addition to obtaining this superior settlement for the class, BSF moved this case

4  through discovery at an exceptionally fast pace.  At the request of United States District Judge

5  Lewis Kaplan, BSF created, and then adhered to, a schedule that completed all discovery and

6  motion practice within a 12-month period.  *See* Iovieno Decl., Exhibit 1.

7  **Vitamins**

8       A $1.1 billion settlement in *In re Vitamins Antitrust Litigation*:

9
10        *The Settlement is unprecedented for many reasons*:  the percentage
          rate on which the Agreement is predicated *is in the highest tier of*
11        *settlements for price-fixing class actions; the total dollar value to*
          *the class is the largest settlement of a price-fixing class action*; the
12        Settlement is a totally cash settlement and calls for immediate
          payment by defendants; the Agreement was reached at a relatively
13        early stage in the litigation; the class purchases from non-settling
          defendants remain in the case as to the non-settling defendants; the
14        release of claims does not cover foreign sales of vitamins or indirect
          purchaser claims; the Settlement contains a provision for three-year
15        injunctive relief barring future collusive behavior by these
          defendants; the Agreement contains a most-favored-nations clause
16        ("MFN clause") with a two-year duration; and the Settlement
          provides for a separate fund for attorneys' fees.
17

18  *In re Vitamins Antitrust Litig.,* 2000 WL 1737867, at *2 (D.D.C. Mar. 31, 2000) (emphasis

19  added).

20       **3.     BSF Has Uncovered Antitrust Conspiracies In Advance of**
                 **Government Action**

21       During the *In re Vitamins Litigation,* the U.S. District Court for the District of Columbia

22  further commended BSF:

23
          [I]t is clear that Boies Schiller was the driving force behind the
24        initial investigation of the vitamins conspiracy.  It was Boies
          Schiller that led a group of firms to research the industry and
25        uncover the illegal actions of vitamins manufacturers across the
          globe.  It was also Boies Schiller that shared early information with
26        the Department of Justice, enabling the criminal investigation to
          begin.  Once the major defendants pled guilty and agreed to pay
27        record criminal fines, *Boies Schiller maintained its prominent role*

28

8

*in the litigation and helped lead the settlement process, with … Bill Isaacson (a member of Boies Schiller) drafting and editing much of the settlement document.*

*In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 226 (D.D.C. 2005) (emphasis added).

Since *In re Vitamins Antitrust Litigation*, BSF also has investigated, uncovered and filed the first class actions showing the existence of cartels in Chinese products exported to the United States, including among vitamin C manufacturers in China and among magnesite producers in China.   John R. Wilke & Kathy Chen, *As China's Trade Clout Grows, So Do Price-Fixing Accusations*, WALL ST. J., Feb. 10, 2006, at A1 (Iovieno Decl., Exhibit 5).

### 4.   Additional Antitrust Litigation Experience

BSF has been co-lead counsel and/or a lead executive committee member in a number of other very significant antitrust class actions, including:

*In re Cardizem Antitrust Litigation* (E.D. Mich.) – Served as co-lead counsel on behalf of direct purchasers of the drug Cardizem; the case settled for $110 million.

*In re Buspirone Antitrust Litigation* (S.D.N.Y.) – Served as co-lead counsel on behalf of direct purchasers of the drug Buspirone; the case settled for $220 million.

*In re Terazosin Hydrochloride Antitrust Litigation* (S.D. Fla.) – Served as co-lead counsel on behalf of direct purchasers of the drug Terazosin Hydrochloride; the case settled for $75 million.

*In re First Databank Antitrust Litigation* (D.D.C.) Served as co-lead counsel in $24 million settlement.

*In re Oxycontin Antitrust Litigation* (S.D.N.Y.) – Serving as co-lead counsel on behalf of direct purchasers of Oxycontin drugs.[3]

*Meijer, Inc. v. Warner Chilcott* (D.D.C.) – Serving on the lead executive committee on behalf of direct purchasers of the drug Ovcon.

*In re Vitamin C Antitrust Litigation* (E.D.N.Y.) – Serving as co-lead counsel on behalf of direct purchasers of Vitamin C.

### 5.   BSF Has Been Retained by Major Companies to Prosecute Important Antitrust Litigation

In addition to its work as plaintiffs' counsel in these antitrust class actions, BSF also has

---

[3] This litigation is presently stayed pending resolution of the underlying patent litigation.

been retained by some of the leading companies in the world to prosecute antitrust violations on their behalf. For example, BSF currently represents American Express Company in its antitrust suit against Visa, Mastercard and several large banks to obtain damages for the defendants' illegal conspiracy to exclude American Express (*American Express Travel Related Servs. Co., Inc. v. Visa U.S.A., et al.* (S.D.N.Y.)). Similarly, technology company Broadcom retained BSF to prosecute its antitrust claims against Qualcomm (*Broadcom Corp. v. Qualcomm Inc.* (D.N.J.)).

### 6. BSF Partners Who Will Work on This Litigation Have Substantial Antitrust and Trial Experience

Partners from a number of BSF offices, with substantial antitrust and trial experience, will play a substantial role in this litigation should the firm be selected lead counsel. The offices and respective names of these attorneys are as follows:

a.   *Oakland, California*

i.   <u>David W. Shapiro</u> – David W. Shapiro is the Administrative Partner in BSF's Oakland, California office. The former United States Attorney and Chief of the Criminal Division in San Francisco, Mr. Shapiro served for 16 years as a federal prosecutor in several offices -- the Eastern District of New York, the District of Arizona, and finally, between 1995 and 2002, in the Northern District of California. He has conducted numerous jury trials in federal district court and arguments in the U.S. Courts of Appeals.

Mr. Shapiro has personally handled complex federal trials and prosecutions. Between 1996 and 1998, he indicted a series of top executives of Media Vision Technology, Inc. in one of the first financial accounting fraud cases brought by the U.S. Attorney's office in San Francisco. Mr. Shapiro has tried cases ranging from financial accounting fraud and federal excise tax fraud to one of the first federal death penalty cases in the country after the re-introduction of the federal death penalty in 1988. In 2006, he successfully tried a three week trial before a jury in Napa County Superior Court and was awarded over $1 million in attorneys' fees.

ii.   <u>John F. Cove, Jr.</u> – John F. Cove, Jr. has extensive experience in antitrust litigation and counseling. Mr. Cove has represented plaintiffs and defendants in a

10

number of antitrust matters, including price fixing, boycott, and monopolization cases, direct and indirect purchaser class actions, and unfair competition actions in federal and state courts around the nation.  Mr. Cove has also represented clients in federal grand jury proceedings investigating alleged cartel activity and other criminal offenses and in premerger reviews before federal and state antitrust authorities.  Before joining the firm as a partner in 2001, Mr. Cove was a trial attorney with the Antitrust Division of the United States Department of Justice for over fourteen years.  As a trial attorney in the Antitrust Division, Mr. Cove investigated and prosecuted cartel activity in industries as diverse as soft drinks, timber, dredging, aerospace and other defense industries, heavy and specialty construction, electric motors, and chemicals in federal courts throughout the Western United States.  He also served as a senior member of the Department's trial team in the landmark monopolization case, *United States v. Microsoft Corporation*.

> b.  ***Washington, DC***

> i.  <u>William A. Isaacson</u> – William A. Isaacson has been a partner in the Washington, DC office of BSF since the inception of Boies & Schiller in 1997.  He is a graduate of the University of Redlands and the University of Virginia School of Law where he was an editor for the University of Virginia Law Review, and received the honor of Order of the Coif and the Margaret G. Hyde Award.  He is a former law clerk for Chief Judge Harrison L. Winter of the United States Court of Appeals for the Fourth Circuit. He is admitted to practice in the District of Columbia.

In recent years, Mr. Isaacson has acted as a trial counsel for the class plaintiffs in *In re Vitamins Antitrust Litigation* (D.D.C.), a three week jury trial of price fixing and market allocation claims in an international cartel case resulting in a jury verdict for the class of  $49.5 million (before trebling). (National Law Journal, August 4, 2003, p. 13).  In 2006, he also acted as lead trial counsel in *In re Scrap Metal Antitrust Litigation* (N.D. Ohio), another multi-week trial of price fixing and market allocation claims, resulting in an $11.5 million verdict and a $23 million award after trebling and judgment reduction for other settlements.  Mr. Isaacson also acted as a Steering Committee Member in *In re Vitamins Antitrust Litigation* in which the firm

1   represented purchasers of a range of vitamins in pursuing price fixing and market allocation

2   claims ("Not Your Father's Class Action," National Law Journal, June 7, 1999, A5), resulting in

3   an over $1 billion in settlements.

4          In addition, Mr. Isaacson has filed the first class actions uncovering cartels in the vitamin

5   C industry in China and among magnesite producers in China.  He has also acted as lead counsel

6   in *In First Databank Antitrust Litigation*, 205 F.R.D. 408, 411 (D.D.C. 2002) (approving $24

7   million settlement) and other class actions.

8          Mr. Isaacson also acted as lead trial counsel for Claimant in *Homestore v. AOL* (AAA

9   Arbitration/Washington D.C.) asserting claims for breach of contract arising out of an internet

10  distribution agreement.  Following a two week trial in 2002 and before a final award, the parties

11  entered a settlement agreement restructuring the distribution agreement and terminating a $57

12  million payment due from Homestore and reducing future payments by $9 million per quarter.

13  (Fair Disclosure Wire, January 9, 2003).  Mr. Isaacson has acted as trial counsel for Respondent

14  in *Marketing Company v. Telecommunications Company* (AAA arbitration/ New York) in which

15  Claimant was denied its request for $30 million in lost profits.  Mr. Isaacson also has acted as a

16  trial counsel in *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi*

17  *Negara*, 364 F.3d 274 (5th Cir. 2004) (arbitration award of $261 million) and *Worldspan v.*

18  *Abacus* (ICC Arbitration / London) (award of $39.5 million).

19                  ii.     <u>Tanya Chutkan</u> – Tanya Chutkan graduated from the University of

20  Pennsylvania School of Law in 1987, where she was an associate editor of the Law Review and

21  an Arthur Littleton Legal Writing Instructor.  She received her Bachelor of Arts Degree in

22  Economics from George Washington University in 1983.  Prior to joining  BSF in 2002, Ms.

23  Chutkan was a trial attorney and supervisor with the D.C. Public Defender Service, where she

24  tried over fifty jury trials, including numerous serious felony cases and complex white collar

25  matters, and argued several appellate cases.  She tried and won acquittal in the first blackmail

26  case to go to trial in the District of Columbia and also won the first known acquittal in the

27  District of Columbia against DNA evidence.

28          Her recent cases include the trial of two federal antitrust class actions on behalf of

12

plaintiff classes, *In re Vitamins Antitrust Litigation* (D.D.C 2003), which resulted in an award of $149.5 million, and I*n re Scrap Metal Antitrust Litigation* (N.D. Ohio 2006), which resulted in an award of $34.5 million. Currently, she represents plaintiff classes in three pending class actions in federal courts in Pennsylvania, the District of Columbia, and New York, and is representing a multinational corporation in a Department of Justice grand jury investigation.  She has also defended individuals as well as corporations in SEC and Department of Justice investigations and in securities and antitrust litigation.

        c.     ***New York, New York***

        i.    <u>Nicholas Gravante</u> – Nicholas Gravante has over 20 years experience litigating and trying complex commercial and criminal cases, including in the area of antitrust.  Currently, Mr. Gravante serves as counsel for a former CEO of a major insurance company and two multi-billion dollar investment companies in connection with various civil actions and regulatory and government investigations.  He also serves as co-lead national counsel for approximately 3,700 independent retail pharmacies who are plaintiffs in a federal antitrust case pending against major drug manufacturers and he also worked on the landmark antitrust case, *United States v. Microsoft*.  Mr. Gravante has tried numerous criminal and civil cases in federal and state courts across the country, and has won several significant acquittals and civil verdicts.  He achieved the acquittal of the leading New York City real estate company in a securities fraud case brought by the New York State Attorney General's Office.  He also prevailed in representing foreign exchange traders accused of executing hundreds of millions of dollars of foreign exchange trades without authorization and won a substantial jury verdict in federal district court in Los Angeles on behalf of a nationally known mystery author against a major publishing house.

        d.     ***Fort Lauderdale, Florida***

        i.    <u>Stuart H. Singer</u> – Stuart H. Singer has over 20 years experience in complex litigation, including extensive antitrust experience, leading him to be recommended with respect to antitrust and litigation in *Best Lawyers in America* and *Chambers USA "America's Leading Lawyers for Business."*  Mr. Singer has represented Fortune 500

companies and other organizations as lead counsel in antitrust litigation, has served as lead counsel in lengthy trials, and has spoken before many professional groups, such as the ABA's Antitrust Section, on antitrust litigation topics.  Mr. Singer is a  graduate of Northwestern University and Harvard Law School, where he served as president of the *Harvard Law Review*. He then served from 1981-1983 as a law clerk to Justice Byron R White at the U.S. Supreme Court.  In 2006, Mr. Singer was included in Law Dragon's list of the *500 Leading Lawyers in America.*

        e.     ***Albany, New York***

        i.    <u>Philip Iovieno</u> – Philip Iovieno has over 15 years of experience in complex commercial litigation, including extensive experience in the area of antitrust.  He has tried cases to verdict in both the federal and state courts, and argued appeals before the Second Circuit and New York State Appellate Division.

Mr. Iovieno's antitrust experience has included the representation of both plaintiffs and defendants in a wide variety of claims under Sherman Act §§ 1 and 2, as well as the Robinson Patman Act.  Some of the most notable recent antitrust cases Mr. Iovieno has worked on include: the landmark case of *United States v. Microsoft*; the defense of a Fortune 50 telecommunications company against federal and state monopolization claims; winning summary judgment (affirmed on appeal by the 6th Circuit) for a Fortune 50 consumer products corporation on claims that it had violated § 2 of the Sherman Act and the Robinson Patman Act; and serving as national counsel for approximately 3,700 independent retail pharmacies who are plaintiffs in a federal antitrust case pending against major drug manufacturers.

   **B.**  **<u>BSF Has Superior Resources and Geographic Coverage To Vigorously Prosecute This Complex Antitrust Class Action Litigation</u>**

BSF also has the resources and geographic reach, including counsel located within the Northern District of California, that qualifies BSF to act as lead counsel.  BSF has more than 230 attorneys in nine separate offices nationwide – including an office in Oakland, California that has fourteen  BSF lawyers.

In contrast, the combined total of all the attorneys at KFK, SRK and Saveri is relatively

14

1   small compared to BSF; the relevant attorneys at those firms are already participating as lead or

2   co-lead counsel in many other pending antitrust class actions; and those firms are also currently

3   seeking that same role in several other major matters, including in *In re TFT-LCD (Flat Panel)*

4   *Antitrust Litigation*, currently pending before the Honorable Susan Illston in the Northern

5   District of California.

6          The Saveri firm is a well-respected law firm; however, it has only one office consisting of

7   twelve attorneys.  *See* Declaration of Guido Saveri in Support of Motion to Appoint Interim

8   Liaison Counsel for Direct Purchaser Plaintiffs, Exhibit 1.  The Saveri firm is also seeking co-

9   lead counsel on behalf of the direct purchaser class in the *In re TFT-LCD (Flat Panel) Antitrust*

10  *Litigation*.  Iovieno Decl., Exhibit 6.[4]  Additionally, the Saveri firm is currently serving as co-

11  lead counsel in numerous other actions.  KFK Motion, at p. 10-11.

12         KFK is also a fine, well-respected firm.  However, KFK has twenty-six attorneys; eleven

13  partners, eight associates, and seven of counsel.  *See* Declaration of Gregory K. Arenson in

14  Support of Motion to Appoint Interim Class Counsel and Interim Liaison Counsel for Direct

15  Purchaser Plaintiffs, Exhibit 1.  KFK is currently serving as either a co-lead counsel or a member

16  of a plaintiffs' executive or steering committee in no less than eleven complex antitrust

17  litigations – one for each of its partners – and, in addition, the firm has a substantial securities

18  class action practice.  KFK Motion, at p. 2.  Furthermore, KFK is also seeking appointment as

19  interim lead class counsel for the direct purchaser class plaintiffs in *In re TFT-LCD (Flat Panel)*

20  *Antitrust Litigation.  See* Iovieno Decl., Exhibit 7.

21         Likewise, SRK is a successful firm with a practice of representing plaintiffs in class

22  actions.  The firm is composed of twelve attorneys; eight partners and four associates.  *See*

23  Declaration of Eugene A. Spector in Support of Motion to Appoint Interim Class Counsel and

24  Interim Liaison Counsel for Direct Purchaser Plaintiffs, Exhibit 1.  According to its papers, SRK

25  is currently serving as either a co-lead counsel or a member of a plaintiffs' executive or steering

26  _____

27  [4] BSF has filed two direct purchaser cases in the LCD antitrust litigation currently pending before
    Judge Illston.  BSF will not be seeking lead or co-lead counsel status in those cases, but may
    participate in another role depending on which firm(s) is or are ultimately appointed as lead

28  counsel for the class.

1   committee in nine complex antitrust litigations.  KFK Motion, at p. 3.

2   **C.  BSF Has Taken Significant Steps to Advance this Litigation**

3   BSF has already hired a consultant and is well into its investigation of the relevant facts

4   and legal theories in this action, including an investigation of industry trends before, during and

5   after the proposed class period.

6   In addition, BSF will submit to the Court a proposed case management schedule that sets

7   out a plan to complete all discovery and motion practice within fourteen months so as to

8   efficiently and expeditiously manage this proceeding through the time of trial.

9   Finally, BSF is confident that it will be able to work cooperatively with counsel for direct

10   purchasers and for indirect purchasers, as it has done in other cases, to coordinate discovery in

11   the related cases efficiently and effectively.

12   **IV.   Conclusion**

13   Based on the foregoing, BSF respectfully requests that its motion be granted and that

14   BSF be named lead interim class counsel and interim liaison counsel in this litigation.

15

16   Dated:  May 14, 2007                    Respectfully Submitted,

17                                              By:      /s/ John F. Cove, Jr.
                                                        John F. Cove, Jr. (CA Bar No. 212213)
18                                                       David W. Shapiro (CA Bar No. 219265)
                                                         Kevin J. Barry (CA Bar No. 229748)
19                                                       BOIES, SCHILLER & FLEXNER LLP
                                                         1999 Harrison Street, Suite 900
20                                                       Oakland, CA   94612
                                                         Tel:  510-874-1000
21                                                       Fax:  510-874-1460
                                                         Email: jcove@bsfllp.com
22                                                                dshapiro@bsfllp.com
                                                                  kbarry@bsfllp.com
23

24

25

26

27

28

16

1    **OF COUNSEL:**

2    William A. Isaacson
     Tanya Chutkan
3    BOIES, SCHILLER & FLEXNER LLP
     5301 Wisconsin Avenue, NW, Suite 800
4    Washington, DC   20015
     Tel:  202-237-2727
5    Fax:  202-237-6131
     Email:  wisaacson@bsfllp.com
6            tchutkan@bsfllp.com

7    Philip J. Iovieno
     Thomas J. Higgs
8    Anne M. Nardacci
     BOIES, SCHILLER & FLEXNER LLP
9    10 N. Pearl Street, 4th Floor
     Albany, NY   12207
10   Tel:  518-434-0600
     Fax:  518-434-0665
11   Email:  piovieno@bsfllp.com
             thiggs@bsfllp.com
12           anardacci@bsfllp.com

13   Nicholas Gravante
     BOIES, SCHILLER & FLEXNER LLP
14   575 Lexington Avenue, 7th Floor
     New York, NY   94612
15   Tel:  212-446-2300
     Fax:  212-446-2350
16   Email:  ngravante@bsfllp.com

17   Stuart H. Singer
     BOIES, SCHILLER & FLEXNER LLP
18   401 East Las Olas Blvd., Suite 1200
     Fort Lauderdale, FL 33301
19   Tel:  954-356-0011
     Fax:  954-356-0022
20   Email:  ssinger@bsfllp.com

21

22

23

24

25

26

27

28

17