1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE GRAPHICS PROCESSING UNITS
ANTITRUST LITIGATION

_____/

This Order Relates To:

ALL ACTIONS

_____/

No. C 06-07417 WHA

MDL No. 1826

**PRETRIAL ORDER No. 4**

**ORDER GRANTING
DEFENDANTS' MOTION TO
STAY DISCOVERY AND
DISCLOSURES**

**INTRODUCTION**

In this antitrust multi-district litigation, defendants move to stay discovery and
disclosures pending the resolution of their motions to dismiss. Plaintiffs have asked that
defendants be required to turn over all documents already produced to the Antitrust Division of
the Department of Justice pursuant to its pending and unindicted criminal investigation.
Contrary to defendants, Federal Rule of Criminal Procedure 6(e) does not forbid the production
of such documents. Also contrary to defendants, the recent *Twombly* decision does not compel
a blanket stay of all discovery in antitrust cases pending resolution of motions to dismiss.
Defendants have, however, shown that the facts surrounding this case warrant a temporary stay
of discovery until the current round of motions to dismiss is resolved. Accordingly, a stay of all
discovery and all disclosures is entered. This is without prejudice to revisiting the issue of
focused, limited discovery in the event the motions to dismiss are granted.

**STATEMENT**

Defendants Nvidia Corporation and ATI Technologies, Inc., manufacture, market, sell, and distribute graphics processing units.  ATI merged with defendant Advanced Micro Devices, Inc., in October 2006.  GPUs are dedictated graphics rendering devices used for displaying computer graphics in computers, game consoles, and mobile devices.  Allegedly, there are only two majors players in the GPU market — AMD and Nvidia.

On November 30, 2006, AMD and Nvidia separately announced that they had received subpoenas asking for documents regarding pricing and customer agreements from the Antitrust Division of the United States Department of Justice.  AMD later confirmed in SEC filings that the investigation was criminal in nature.  Thus far the investigation has not resulted in any indictments.

The first of these civil antitrust actions was filed on December 4, 2006.  Many others quickly followed.  A majority of the complaints were filed by indirect purchasers of GPUs; the remainder of them were filed by direct purchasers.  By order of the Judicial Panel on Multidistrict Litigation, a number of these actions were consolidated for pretrial purposes on April 18, 2007, pursuant to 28 U.S.C. 1407.  Other tag-along actions have been transferred and consolidated into this multi-district litigation proceeding.

An initial case management conference was held on May 24, 2007, in which parties first discussed the issue of discovery and its relationship to defendants' anticipated motions to dismiss.  A briefing schedule for both the motion to stay and the motions to dismiss was set at the conference.  After the conference, an order dated May 30, 2007, appointed interim class counsel for the indirect and direct purchaser plaintiffs.  The motion for a stay of discovery was filed on June 7, 2007, and complaints for both the direct and indirect purchasers were filed on June 14, 2007.  The complaints allege that AMD and Nvidia entered into price-fixing agreements in violation of Section 1 of the Sherman Act and various other state-law claims.  The motions to dismiss will be heard on September 20, 2007.

A lengthy hearing on the motion to stay discovery was held on July 10, 2007.  Attorney Alexandra Shepard appeared specially on behalf of the Antitrust Division of the Department of

1   Justice.  She addressed some of the Court's questions regarding the status of the government

2   investigation and stated that the government neither favored nor opposed a stay.  Also, parties

3   were invited to submit supplemental briefing on the issue of prejudice to plaintiffs and the effect

4   of the statute of limitations if a blanket stay of discovery were granted.

5                                                   **ANALYSIS**

6           Under Rule 26(c), the Court may, on a showing of good cause, enter an order to stay

7   discovery in order to "protect a party or person from annoyance, embarrassment, oppression, or

8   undue burden or expense."  District courts have broad discretion to stay discovery pending the

9   resolution of dispositive motions, including motions to dismiss under Rule 12(b)(6).  *Jarvis v.*

10  *Regan*, 833 F.2d 149, 155 (9th Cir. 1987).

11          **1.      FEDERAL RULE OF CRIMINAL PROCEDURE 6(e).**

12          Defendants contend that rules governing secrecy during a grand jury proceeding support

13  a stay of all discovery.  Grand jury secrecy is governed by Federal Rule of Criminal Procedure

14  6(e).  Under Rule 6(e)(2)(A), "[n]o obligation of secrecy may be imposed on any person except

15  in accordance with Rule 6(e)(2)(B)."  In turn, Rule 6(e)(2)(B) states that unless provided

16  otherwise, grand jurors, interpreters, court reporters, operators of recording devices, persons

17  transcribing recorded testimony, and attorneys for the government must not disclose matters

18  occurring before the grand jury.  Simply put, defendants are *not* in the Rule 6(e) list.  They are

19  free to reveal the subpoena itself as well as all documents produced in response to it.  Indeed, a

20  witness appearing before a grand jury is thereafter free to hold a press conference and reveal

21  everything that was asked of him or her and what his or her answers were.  The fact of any

22  subpoena and its requests may likewise be published by the recipient.  Since defendants are free

23  to volunteer the information, a court may compel a disclosure.  Nothing in Rule 6(e) is

24  otherwise.

25          Defendants next argue that allowing discovery at this time could disrupt the Antitrust

26  Division's ongoing investigation.  As stated, however, Attorney Shepard appeared for the

27  government at the hearing and voiced no such objection.  She explained that a grand jury had

28  been empaneled on this matter.  She also stated that the Antitrust Division had not discussed the

**United States District Court**
For the Northern District of California

3

**United States District Court**
For the Northern District of California

1   pending motion to stay with the parties.  The government took no position on the pending

2   motion and presently has no plans to intervene in this action.  Since the Antitrust Division

3   appears to believe discovery in this action can coexist with its grand jury investigation,

4   defendants' argument that discovery here would somehow derail the Antitrust Division's efforts

5   fails.

6          Defendants next argue that Rule 6(e), as interpreted in case law, supports a general

7   policy of not requiring defendants to disclose documents produced in a grand jury investigation.

8   Requiring disclosure, the argument goes, would open up defendants to scandal merely on

9   account of a grand jury investigation that may go nowhere.  This argument is overblown. The

10  records will show only what the records will show.  If they show antitrust scandal, then they

11  would reveal nothing more than the facts.

12         Rule 6(e) has not been interpreted as a complete bar on producing documents given to

13  the grand jury.  "[I]f a document is sought for its own sake rather than to learn what took place

14  before the grand jury, and if its disclosure will not compromise the integrity of the grand jury

15  process, Rule 6(e) does not prohibit its release."  *United States v. Dynavac*, 6 F.3d 1407,

16  1411–12 (9th Cir. 1993).  The Ninth Circuit later explained that "the only exception to *Dynavac*

17  is if the material reveals a secret aspect of the grand jury's workings."  *Kersting v. United*

18  *States*, 206 F.3d 817, 821 (9th Cir. 2000).  Defendants' policy argument fails because Ninth

19  Circuit decisions reflect a concern in protecting the grand jury proceedings themselves, not the

20  reputations of targets of investigations.  Here, plaintiffs do not ask for documents related to any

21  actual proceedings before a grand jury.

22         Defendants cite *In re Sealed Case*, 801 F.2d 1379, 1381–32 (D.C. Cir. 1986), in support

23  of their view.  *First*, this decision is not binding here as it is out-of-circuit authority.  *Second*, in

24  that decision, the documents sought by the SEC were wide-ranging, and affidavits in connection

25  with the requests failed to establish a need for any specific document.  *Id*. at 1382.  The D.C.

26  Circuit held that such broad requests were inappropriate.  Had the SEC shown particularized

27  need for specific, identifiable documents, the SEC could have possibly received them.

28

1    Finally, defendants contend that the decision *In re Sulfuric Acid Antitrust Litigation*,

2    2004 WL 769376 (N.D. Ill. 2004), forbids turning over the documents produced earlier to the

3    Department of Justice.  That decision acknowledged that Rule 6(e) does not explicitly allow

4    defendants to resist document production in a civil case, recognizing that civil defendants are

5    not named in the rule.  There, a grand jury was in session concurrently with a parallel civil

6    antitrust action.  A motion to compel production of *any and all* documents produced to or

7    received from *any* federal or state government entity was denied.  *Id*. at *1.  Perhaps this was a

8    sound outcome but nothing in Rule 6(e) requires the result.

9    In short, contrary to defendants, Rule 6(e) simply does not authorize a blanket

10   prohibition on civil production of documents already given to a grand jury.  Nor does it bar

11   compliance with a request to make a duplicate set of all documents given to a grand jury.

12       **2.    THE *TWOMBLY* DECISION.**

13   Defendants next argue that a recent Supreme Court decision, *Bell Atlantic Corp. v.*

14   *Twombly*, ___ U.S. ____, 127 S.Ct. 1955 (May 21, 2006), holds by implication that no

15   discovery may proceed in an antitrust action before the complaint is held viable.

16   The Supreme Court's decision in *Twombly* addressed pleading standards for antitrust

17   complaints alleging conspiracy under the Sherman Act.  It noted that "[w]hile a complaint

18   attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

19   plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

20   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

21   do."  The decision criticized a common interpretation of the hoary "no set of facts" language

22   from *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).  *Twombly* noted that "[o]n such a focused

23   and literal reading of *Conley*'s 'no set of facts,' a wholly conclusory statement of claim would

24   survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff

25   might later establish some 'set of [undisclosed] facts' to support recovery."  *Id*. at 1968.

26   Specific to antitrust actions, the Supreme Court held that merely pleading parallel

27   conduct or interdependence of behavior, even when consistent with antitrust conspiracy, was

28   not sufficient to state a claim for conspiracy.  *Id*. at 1964.  Stating a claim under Section 1 of the

**United States District Court**
For the Northern District of California

5

United States District Court

For the Northern District of California

1   Sherman Act "requires a complaint with enough factual matter (taken as true) to suggest that an

2   agreement was made.  Asking for plausible grounds to infer an agreement does not impose a

3   probability requirement at the pleading stage; it simply calls for enough facts to raise a

4   reasonable expectation that discovery will reveal evidence of illegal agreement."  *Id*. at 1965.

5   On the facts in *Twombly*, the defendant telecom companies' behavior could have been

6   conceivably construed as consistent with illegal activity, however, their behavior also supported

7   a conclusion that the telecom companies were merely acting rationally in accordance with past

8   behavior.  *Id*. at 1971–73.  The plaintiffs had "not nudged their claims across the line from

9   conceivable to plausible," so the complaint was dismissed.  *Id*. at 1974.

10          *Twombly* also discussed discovery in antitrust actions.  The decision noted that "it is one

11  thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite

12  another to forget that proceeding to antitrust discovery can be expensive."  *Id*. at 1967 (internal

13  citations omitted).  The action involved "a putative class of at least 90 percent of all subscribers

14  to local telephone or high-speed Internet service in the continental United States, in an action

15  against America's largest telecommunications firms (with many thousands of employees

16  generating reams and gigabytes of business records) for unspecified (if any) instances of

17  antitrust violations that allegedly occurred over a period of seven years."  *Ibid*.  The Court

18  concluded that "it is only by taking care to require allegations that reach the level suggesting

19  conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases

20  with no reasonably founded hope that the [discovery] process will reveal relevant evidence."

21  *Id*. at 1967.

22          Defendants' statement that "*Twombly* stands for the proposition that antitrust plaintiffs

23  cannot subject defendants to *any* discovery until the Court determines that the plaintiffs have

24  articulated a 'plausible entitlement to relief' on the face of the complaint" is incorrect (Reply

25  Br. at 2) (emphasis in original).  This order does not read *Twombly* to erect an automatic,

26  blanket prohibition on any and all discovery before an antitrust plaintiff's complaint survives a

27  motion to dismiss.  Defendants' argument upends the Supreme Court's holding; the decision

28  used concerns about the breadth and expense of antitrust discovery to identify pleading

United States District Court

For the Northern District of California

1    standards for complaints, it did not use pleading standards to find a reason to foreclose all

2    discovery.

3           To be sure, to allow antitrust discovery prior to sustaining a complaint would defeat one

4    of the rationales of *Twombly*, at least when the discovery would be burdensome.  When,

5    however, the discovery would not be so burdensome, a closer question is presented, a question

6    calling for the exercise of discretion and the balancing of competing factors.

7           **3.      CALIBRATING DISCOVERY IN TANDEM WITH THE DISMISSAL MOTIONS.**

8           Having rejected the arguments for an automatic, blanket stay of all antitrust discovery

9    pending identification of a viable claim, the issue remains whether discovery should, on the

10   instant record, be postponed pending the resolution of the motions to dismiss.  This order

11   concludes that first resolving the motions to dismiss is the better course.  After full ventilation

12   of the viability *vel non* of the complaint, we will all be in a much better position to evaluate how

13   much, if any, discovery to allow.  If, among other possible outcomes, the complaint proves to be

14   solid save for perhaps a single soft element for which evidence would normally be outside the

15   reach of plaintiffs' counsel without discovery, then it may be that a narrowly-directed and less

16   burdensome discovery plan should be allowed with leave to amend to follow.  If, however, the

17   complaint proves to be so weak that any discovery at all would be a mere fishing expedition,

18   then discovery likely will be denied.  Of course, if the complaint is sustained, then discovery

19   will proceed apace.  The immediate point is that adjudicating the motions to dismiss will shed

20   light on the best course for discovery.

21          Our immediate circumstances omit any compelling need for prompt discovery, such as

22   might be the case if provisional relief were being sought or if testimony needed to be preserved

23   due to ill health of a witness.  It is true that the Court has indicated that it will try to manage this

24   case so that it will end at least by the end of 2008.  The leisurely briefing schedule on the

25   motions to dismiss was recommended by both sides — neither side should now try to capitalize

26   on that schedule to advance or to delay discovery.  In sum, we have no urgent need for

27   immediate discovery.  We have time enough to critique the complaint and to then consider the

28   best course for discovery.

**United States District Court**
For the Northern District of California

1   Nor is this a case where it is almost certain that the complaint is viable, such as is often

2   true where guilty pleas have already been entered in a parallel criminal case.  Of course, in such

3   conditions, at least some discovery should ordinarily proceed despite any pending motion to

4   dismiss (unless civil discovery would interfere with a criminal case).  Here, there has been no

5   indictment, much less any guilty plea by any defendant.  This factor seems to distinguish the

6   circumstances in the unreported decision of Judge Claudia Wilken in the SRAM case where she

7   ordered the records given to the Antitrust Division to be produced to plaintiffs' counsel.

8   It is true that the discovery sought at this time is the same discovery already gathered,

9   assembled, and produced to the government.  Therefore, the incremental cost to produce a

10   duplicate set to plaintiffs' counsel would be minor in the overall picture.  Still, there would be

11   the issue of various objections (based, for example, on employee privacy) that might be

12   assertable against plaintiffs that were unasserted against the government.  Defendants would be

13   entitled to interpose possibly valid objections that would take time to evaluate.  And, regardless

14   of the foregoing, the compelled act of turning records over to the government pursuant to the

15   subpoena does not mean that everyone else has an equal right to rummage through the same

16   records.  Defendants have a legitimate interest in maintaining the confidentiality of their

17   records.  Without question, this interest may eventually have to yield to civil discovery interests

18   but, for the reason stated, whether and the extent to which this should occur will be best decided

19   after ruling on the Rule 12 motions.  All other considerations raised by the parties, including

20   issues of prejudice and burden, may be re-asserted at that time, the foregoing being persuasive

21   and dispositive at this juncture.

22                                          **CONCLUSION**

23   For all of the above-stated reasons, defendants' motion to stay all discovery and

24   disclosures pending the resolution of the motions to dismiss is **GRANTED** subject to a new

25   evaluation after the motions to dismiss are decided.

26   **IT IS SO ORDERED.**

27   Dated:  July 24, 2007.                                 _____

28                                                          WILLIAM ALSUP
                                                            UNITED STATES DISTRICT JUDGE